OSCN Found Document:STATE v. MARCUM

OSCN navigation

Home

Courts

Court Dockets

Legal Research

Calendar

Help

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

STATE v. MARCUM2014 OK CR 1Case Number: S-2012-976Decided: 01/28/2014STATE OF OKLAHOMA, Appellant, v. ANGELA MARIE MARCUM, Appellee.
Cite as: 2014 OK CR 1, __ __

OPINION
SMITH, VICE PRESIDING JUDGE:
¶1 Angela Marie Marcum, James Michael Miller, and William Harbert Layden Jr.
were charged in the District Court of Pittsburg County, Case No. CF-2011-347,
with Conspiracy to Defraud the State of Oklahoma in violation of
21 O.S.2001, § 424. All three defendants
moved to suppress evidence relating to text messages. After a June 21, 2012
hearing, the Honorable Joe Sam Vassar issued an Order on November 12, 2012,
granting the motions of Miller and Marcum and overruling Layden's motion. The
State timely appealed that order as to Marcum and Miller under 22 O.S.2011, § 1053(5), in this Court, Case
No. S-2012-1005.
¶2 Miller was also charged in the District Court of Oklahoma County, Case No.
CF-2011-5312, with Perjury (Counts I, II and III) in violation of
21 O.S.2001, § 491. Miller moved to suppress
evidence relating to text messages in that case. After an October 26, 2012
hearing, the Honorable Kenneth A. Watson granted Miller's motion to
suppress. The State timely appealed that Order under 22 O.S.2011, § 1053(5), in this Court, Case
No. S-2012-976. On December 27, 2012, this Court granted the State's motion to
consolidate the cases as Case No. S-2012-976. On March 13, 2013, the State moved
to dismiss the appeal against Miller. This motion was granted on March 28, 2013.
Marcum remains as the only Appellee in the consolidated appeal. The State raises
three propositions of error in support of its petition.
¶3 Miller was an assistant district attorney in Pittsburg County and Marcum
was the drug court coordinator responsible for collecting money. Miller and
Marcum were romantically involved. The Pittsburg County District Attorney told
Miller that the OSBI was in town investigating suspected embezzlement. Shortly
after that conversation, Miller was seen in the alley behind the courthouse,
texting quickly. Miller sent Marcum text messages from his personal cell phone,
and received text messages from her on his personal phone. In the Pittsburg
County Order granting the motion to suppress in part, the trial court describes
the messages as "salacious and incriminating." The defendants were
accused in a multicounty grand jury indictment of obstructing the investigation
of that crime.
¶4 The State sought to admit Exhibit 4, records of the U.S. Cellular
telephone company of texts to and from Miller's cell phone, which were obtained
pursuant to a search warrant. The State neither searched nor obtained records
from Miller's actual cellular telephone. The defendants moved before
trial to suppress these records. Miller took the lead in making and arguing this
motion. He argued that his Fourth Amendment right against search and seizure was
violated by seizure of the U.S. Cellular business records concerning Miller's
texts. He claimed that the search warrant was invalid because the affidavit
supporting it was insufficient. Marcum joined this motion. Judge Vassar found
that both Marcum and Miller had a reasonable expectation that their texts would
be private, and had standing to urge a motion to suppress. In considering the
merits of the motion, the trial court specifically found that Oklahoma had not
adopted the good-faith exception, and did not apply it when considering alleged
defects in the affidavit supporting the search warrant.
¶5 We find regarding Proposition I that a review of the record shows the
appeal is proper and review of the issue is in the best interests of justice.
22 O.S.2011, § 1053(5); State v. Pope,
2009 OK CR 9, ¶ 3, 204 P.3d 1285, 1287.
¶6 We find in Proposition II that the trial court erred in suppressing the
evidence as to Marcum. The defendants in the Pittsburg County case sought to
suppress the evidence of text messages by attacking the search warrant. The
search warrant was directed, not to any defendant's cell phone, but to the
business records of the U.S. Cellular phone company, a corporation, which kept a
record of the texts in the regular course of business.1 The U.S. Cellular records
contained text messages sent from and received by Miller's personal cell phone.
The State argued the defendants had no standing to contest the search warrant.
The defendants argued that they had a protected privacy interest in the U.S.
Cellular records of the text messages under the Fourth Amendment. Despite the
complex procedural history of this case, the threshold issue before this Court
is quite narrow: does Marcum have a Fourth Amendment reasonable expectation of
privacy in the U.S. Cellular records of the texts from Miller's phone account,
including messages Miller sent to her and replies she sent to Miller's phone,
which were received by Miller? That is, the issue is not whether Marcum has an
expectation of privacy regarding the contents of text messages from her own
phone, or even regarding phone company business records kept for her phone
account. Given the facts of this case, Miller is the only person who could claim
an expectation of privacy regarding message content and records from his
personal phone account. We decide only the narrow issue before us.
¶7 The initial issue below and on appeal is whether Marcum has a reasonable
expectation of privacy in the U.S. Cellular records of Miller's phone account.
This is not an analysis of standing. Fourth Amendment rights are personal, may
not be asserted on behalf of another, and will be enforced only where a search
and seizure infringes on a defendant's own rights. Rakas v. Illinois,
439
U.S. 128, 133-34, 99 S.Ct. 421, 425-26, 58 L.Ed.2d 387 (1978). Whether a
defendant's Fourth Amendment rights have been violated is analyzed under
substantive Fourth Amendment law, not as a question of standing. Minnesota v.
Carter, 525 U.S. 83, 87-88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998);
Rakas, 439 U.S. at 139-40, 99 S.Ct. at 428. Marcum must prove she exhibited an
actual, subjective expectation of privacy, which society is prepared to
recognize as reasonable. Champeau v. State, 1984 OK CR 54, ¶ 11, 678 P.2d 1192, 1195-96; Katz v. United States,
389
U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).
A legitimate expectation of privacy may arise "by reference to concepts of real
or personal property law or to understandings that are recognized and permitted
by society." United States v. Jones, __ U.S. __, 132 S.Ct. 945, 951, 181
L.Ed.2d 911 (2012), quoting Carter, 525 U.S. at 88, 119 S.Ct. at 472;
State v. Bass, 2013 OK CR 7, ¶ 5, 300 P.3d 1193, 1195 (quotation and citation omitted). In
finding that Marcum had a privacy interest in the records, Judge Vassar found
that Marcum made this showing. We review this decision for an abuse of
discretion. Bass, 2013 OK CR 7, ¶ 10, 300 P.3d at 1196. An abuse of
discretion is any unreasonable or arbitrary action taken without proper
consideration of the facts and law pertaining to the issue; a clearly erroneous
conclusion and judgment, clearly against the logic and effect of the facts.
Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.
¶8 This Court has not previously determined whether there is a Fourth
Amendment right to privacy under these circumstances. Generally, "the issuance
of a subpoena to a third party to obtain the records of that party does not
violate the rights of a defendant, even if a criminal prosecution is
contemplated at the time of [sic] the subpoena is issued." United
States v. Miller, 425 U.S. 435, 444, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71
(1976). It is settled that there is no reasonable expectation of privacy in call
records of phone numbers kept by a telephone company. Smith v. Maryland,
442
U.S. 735, 745-46, 99 S.Ct. 2577, 2583, 61 L.Ed.2d 220 (1979). Here, the records
consist of more than account numbers, and include the contents of the text
messages themselves. Also, of course, here Marcum is not the account holder on
the U.S. Cellular account named in the warrant. As the following discussion
shows, no published case from any other court has addressed precisely this
issue; one unpublished Eleventh Circuit case has a very similar issue.
Generally, the cases discussing cell phones are more inclined to find a right to
privacy in one's personal cell phone with the advent of smartphones, which
contain a large amount of data and resemble computers more than regular
telephones.
¶9 The United States Supreme Court has so far refused to explicitly recognize
a right to privacy in the content of cell phones. The United States Supreme
Court has reviewed the issue of a reasonable expectation of privacy in text
messages in a different context, in City of Ontario, Ca. v. Quon,
560
U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010). There, the City issued
employees pagers which sent and received texts. After several months, the City
audited the account, asked the wireless provider for transcripts of employees'
text messages, discovered some were not work-related, referred the matter to the
internal affairs division, and Quon was disciplined. He, and the persons with
whom he had exchanged the messages, claimed that they had a reasonable
expectation of privacy in the messages, and that the audit was not reasonable.
Quon concerned a government employer auditing equipment provided by the
employer for work use, and the decision is based on those grounds. The City had
warned employees that it treated the pager text messages as if they were emails
on City accounts, and that the messages were eligible for auditing, but a
supervisor had told Quon that if he paid for the account overage there would be
no need for an audit. The Supreme Court noted that the parties disagreed as to
whether Quon, as an employee, had a reasonable expectation of privacy, but chose
not to answer that question: "The Court must proceed with care when considering
the whole concept of privacy expectations in communications made on electronic
equipment owned by a government employer. The judiciary risks error by
elaborating too fully on the Fourth Amendment implications of emerging
technology before its role in society has become clear." Quon, 560 U.S.
at __, 130 S.Ct. at 2629. The Court further explained:
[T]he Court would have difficulty predicting how employees' privacy
expectations will be shaped by those changes or the degree to which society will
be prepared to recognize those expectations as reasonable. Cell phone and text
message communications are so pervasive that some persons may consider them to
be essential means or necessary instruments for self-expression, even
self-identification. That might strengthen the case for an expectation of
privacy. On the other hand, the ubiquity of those devices has made them
generally affordable, so one could counter that employees who need cell phones
or similar devices for personal matters can purchase and pay for their own. And
employer policies concerning communications will of course shape the reasonable
expectations of their employees, especially to the extent that such policies are
clearly communicated.
Quon, 560 U.S. at __, 130 S.Ct. at 2630 (citation omitted). The Court was
discussing text messages in the employment context, rather than, as occurred
here, text messages connected with a private personal account.
¶10 In United States v. Jones, __ U.S. __, 132 S.Ct. 945, 181 L.Ed.2d
911 (2012), the United States Supreme Court held that the Fourth Amendment was
violated when the government installed a GPS tracking device on a target vehicle
and used it to monitor the vehicle's movements. The majority opinion was decided
on the fact of the government's physical intrusion and occupation of private
property in order to get information, rather than any reasonable expectation of
privacy in the information. Jones, 132 S.Ct. at 949-50. However,
concurring Justices pondered the relationship between electronic tracking of
movement, other forms of electronic communication, and expectations of privacy.
Justice Sotomayor stated,
More fundamentally, it may be necessary to reconsider the premise that an
individual has no reasonable expectation of privacy in information voluntarily
disclosed to third parties. This approach is ill suited to the digital age, in
which people reveal a great deal of information about themselves to third
parties in the course of carrying out mundane tasks. People disclose the phone
numbers that they dial or text to their cellular providers; the URLs that they
visit and the e-mail addresses with which they correspond to their Internet
service providers; and the books, groceries, and medications they purchase to
online retailers. Perhaps, as Justice Alito notes, some people may find the
"tradeoff" of privacy for convenience "worthwhile," or come to accept this
"diminution of privacy" as "inevitable," post, at 962, and perhaps not. I for
one doubt that people would accept without complaint the warrantless disclosure
to the Government of a list of every Web site they had visited in the last week,
or month, or year. But whatever the societal expectations, they can attain
constitutionally protected status only if our Fourth Amendment jurisprudence
ceases to treat secrecy as a prerequisite for privacy. I would not assume that
all information voluntarily disclosed to some member of the public for a limited
purpose is, for that reason alone, disentitled to Fourth Amendment
protection.
Jones, 132 S.Ct. at 957 (Sotomayor, J., concurring) (citations omitted).
Concurring in the judgment, Justice Alito would have analyzed the issue
exclusively under the Fourth Amendment reasonable expectation of privacy. He
noted:
[T]he Katz test rests on the assumption that this hypothetical
reasonable person has a well-developed and stable set of privacy expectations.
But technology can change those expectations. Dramatic technological change may
lead to periods in which popular expectations are in flux and may ultimately
produce significant changes in popular attitudes. New technology may provide
increased convenience or security at the expense of privacy, and many people may
find the tradeoff worthwhile. And even if the public does not welcome the
diminution of privacy that new technology entails, they may eventually reconcile
themselves to this development as inevitable . . . . On the other hand, concern
about new intrusions on privacy may spur the enactment of legislation to protect
against these intrusions. This is what ultimately happened with respect to
wiretapping. After Katz, Congress did not leave it to the courts to
develop a body of Fourth Amendment case law governing that complex subject.
Instead, Congress promptly enacted a comprehensive statute, see 18 U.S.C. §§
2510-2522 (2006 ed. and Supp. IV), and since that time, the regulation of
wiretapping has been governed primarily by statute and not by case
law.
Jones, 132 S.Ct. at 962-63 (Alito, J., concurring in the judgment)
(citations and footnote omitted).
¶11 Some other jurisdictions have discussed cell phones, smartphones, and
text messages. In United States v. Finley, 477 F.3d 250 (5th Cir. 2007)
the Fifth Circuit held that a defendant had a reasonable expectation of privacy
in his text messages on his employer-provided cell phone, and the subsequent
warrantless search of the text messages was improper. The Fifth Circuit found
that Finley had a possessory interest in the phone, that he took some steps to
protect his privacy in the phone, and that while he might have expected his
employer to see the messages he might reasonably have expected it to be free
from government and public inspection; however, the opinion concluded, the
search was permissible as a search incident to arrest. Finley, 477 F.3d
at 259-60. Finley does not treat the subject in depth. Several courts
have subsequently found a reasonable expectation of privacy in a personal cell
phone's contents. See, e.g., United States v. Davis, 787
F.Supp.2d 1165, 1170 (D.Or. 2011) (personal cell phone including text messages);
State v. Smith, 920 N.E.2d 949, 955 (Ohio 2009) (personal cell phone's
general contents); United States v Zavala, 541 F.3d 562, 577 (5th Cir.
2008); State v. Boyd, 992 A.2d 1071, 1080 (Conn. 2010). The Tenth Circuit
has implicitly found a reasonable expectation of privacy in a personal cell
phone, which does not preclude a search of the phone incident to arrest.
Silvan W. v. Briggs, 309 Fed.Appx. 216, 2009 WL 159429, *6 (10th Cir.
2009). A Louisiana appellate court has found that a person has a reasonable
expectation of privacy in text messages where he was the exclusive user of the
phone, though he was not the phone's owner or account holder. State v.
Bone, 107 So.3d 49, 66 (La.App. 5. Cir. 2012). The U.S. District Court for
the Southern District of Florida also found a reasonable expectation of privacy
in cell phone text messages, but mistakenly cited Quon, when Quon
explicitly refused to make such a finding, casting doubt on the Florida ruling.
U.S. v. Gomez, 807 F.Supp.2d 1134, 1140-41 (S.D.Fla. 2011); see also
U.S. v. Quintana, 594 F.Supp.2d 1291, 1299 (M.D.Fla. 2009) (same). Idaho
courts have found a reasonable expectation of privacy in cell phone records and
text messages based on provisions of the Idaho Constitution, which offers
greater protection than the United States Constitution. State v. Branigh,
313 P.3d 732, 739 (Idaho App. 2013), and cases cited therein.
¶12 In an unpublished case, the U.S. District Court for Kansas discussed the
unique privacy concerns raised by smartphones, finding that most users would
have a reasonable expectation of privacy in the phones' contents. United
States v. Aispuro, 2013 WL 3820017, *14 (D.Kan. 2013); see also
United States v. McAleese, 2013 WL 3479410, *8 n. 8 (E.D.Pa. 2013). The
Massachusetts Supreme Court, while allowing cell phones to be searched incident
to arrest for a recent call list, distinguished smartphones, noting, "We have
wisely not yet ruled whether a more intrusive search of a smartphone, or any
other device capable of storing highly personal information, may be conducted as
a search incident to arrest, even where the police may have probable cause to
believe that evidence of the crime of arrest may be found in the text messages,
e-mails, or other data storage areas of the telephone where an individual
maintains a reasonable expectation of privacy." Commonwealth v. Phifer,
979 N.E.2d 210, 217 (Mass. 2012) (Gants, J., concurring).
¶13 In suppressing this evidence against Marcum, Judge Vassar relied on a
Missouri district court of appeals case, State v. Clampitt, 364 S.W.3d
605 (Mo.App.W.D. 2012). In Clampitt, the prosecutor obtained text message
content, for the phone of the account holder himself (not, as here, a person who
received and sent messages to the account holder), from a U.S. Cellular account
through an investigative subpoena, not a warrant. Clampitt discussed
whether a person had a reasonable expectation of privacy in the contents of text
messages where the contents were in the possession of a third party, a telephone
company. Relying on a Sixth Circuit case discussing email accounts, United
States v. Warshak, 631 F.3d 266, 286 (6th Cir.2010), the Missouri court
noted that mere third party access to subscribers' accounts did not
automatically extinguish a reasonable expectation of privacy. Clampitt,
364 S.W.3d at 611. Judge Vassar quoted this passage with approval:
Furthermore, society's continued expectation of privacy in communications
made by letter or phone call demonstrates its willingness to recognize a
legitimate expectation of privacy in the contents of text messages. What
individuals once communicated through phone calls and letters can now be sent in
a text message. Thus, as text messaging becomes an ever-increasing substitute
for the more traditional forms of communication, it follows that society expects
the contents of text messages to receive the same Fourth Amendment protections
afforded to letters and phone calls. We therefore find that the trial court did
not err in concluding that Clampitt had a reasonable expectation of privacy in
the contents of his text messages.
Clampitt, 364 S.W.3d at 611.
¶14 All the cases from other jurisdictions discussed above, including
Clampitt, lack an important feature of this case: they all concern the
reasonable expectation of the person who holds the account, owns the phone, or
is personally given the phone for his use by his employer. Marcum is not that
person. Marcum's strongest claim to an expectation of privacy is in the texts
she sent to Miller's phone, which were received by him and recorded on Miller's
account records. This is similar to mailing a letter; there is no expectation of
privacy once the letter is delivered. See, e.g., United States
v. Gordon, 168 F.3d 1222, 1228 (10th Cir. 1999). It is like leaving a voice
mail message, having the recipient receive and play the message, and then
claiming the message is private. In an unpublished opinion the Eleventh Circuit
found the defendants had no reasonable expectation of privacy in messages they
had sent to or received from a third party, because once the messages were both
transmitted and received, the expectation of privacy was lost. United States
v. Jones, 149 Fed.Appx. 954, 2005 WL 2284283, **3 (11th Cir. 2005). The
Minnesota Supreme Court found that a defendant had no reasonable expectation of
privacy in cell phone records procured from a phone company where, although he
possessed and used the phone, he was not the account holder and had no
relationship with the phone company. State v. Griffin, 834 N.W.2d 688,
696-97 (Minn. 2013). In an unpublished case, a Texas appellate court has found a
defendant had no reasonable expectation of privacy in a telephone company's cell
phone records for the accounts of co-defendants. Anderson v. State, 2013
WL 1819979, *11 (Tex.App. Dallas 2013); see also Contreras v.
State, 2012 WL 3737714, *3 (Tex.App. Fort Worth 2012). A Washington
appellate court found that a defendant had no reasonable expectation of privacy
in text messages he sent to the cell phone of a third party, despite the
characteristics of smartphones: "[I]t is the individual's decision to transmit a
message to an electronic device that could be in anybody's possession - and not
the receiving device's level of technological complexity - that defeats the
individual's expectation of privacy in that communication." State v.
Hinton, 280 P.3d 476, 482 (Wash. App. Div. 2 2012). The Washington Court
distinguished cases discussing a defendant's expectation of privacy in his own
phone, saying "That an individual may have a reasonable expectation of privacy
in certain contents of his or her own cell phone, including the sent and
received text messages that are stored on the phone, is simply not at issue
here." Hinton, 280 P.3d at 483. The same appellate court, in another
case, found that a defendant gave implied consent to the recording of text
messages he sent to a third party's smartphone under the state's privacy act,
and the subsequent search of the smartphone did not violate the defendant's
privacy. State v. Roden, 279 P.3d 461, 465 (Wash.App. Div. 2
2012). Oklahoma law similarly makes provision for interception of an electronic
communication where the interceptor is party to the communication, or when one
of the parties has given prior consent to the communication. 13 O.S.2011, § 176.4.
¶15 Addressing only the narrow question before us, Marcum has not
demonstrated a reasonable expectation of privacy in the records seized from U.S.
Cellular for Miller's phone account. This Court adopts the reasoning of the
courts which have concluded that there is no expectation of privacy in the text
messages or account records of another person, where the defendant has no
possessory interest in the cell phone in question, and particularly where, as
here, the actual warrant is directed to a third party. The trial court abused
its discretion in finding that Marcum had a reasonable expectation of privacy in
the records of text messages sent from and received by Miller's phone, and kept
by U.S. Cellular. Neloms, 2012 OK CR 7, ¶ 35, 274 P.3d at 170. This proposition
is granted, and the case is reversed and remanded for further proceedings.
¶16 Given our resolution of Proposition II, Proposition III is moot. However,
we note that, in finding the search warrant invalid, the district court rejected
the State's reliance on the good faith exception, stating that this Court had
not adopted that exception under these circumstances. This is not correct. This
Court recently adopted the good faith exception.
[The officers] were also acting in "good faith" and their actions fall
directly under the criteria outlined by the United States Supreme Court in
United States v. Leon, 468 U.S. 897, 920-21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d
677 (1984). Since this Court has previously held in DeGraff v. State,
1909 OK CR 82, 2 Okla.Crim. 519,
103 P. 538, 541; State v.
Thomason, 1975 OK CR
148, ¶ 14, 538 P.2d
1080, 1086; and Long v. State, 1985 OK CR 119, ¶ 6, 706 P.2d 915, 916-17, that the Federal Constitution and
the Oklahoma Constitution are the same in the rights protected, we find
Leon is applicable here. The exclusionary rule is not applied when a law
enforcement officer has conducted a search in "objectively reasonable reliance"
upon a search warrant issued by a magistrate and has abided by the terms of the
warrant even if the warrant is subsequently determined to be invalid. See
Leon, 468 U.S. at 922, 104 S.Ct. at 3420.
Sittingdown v. State, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718.
DECISION
¶17 The Pittsburg County District Court's Order sustaining the defendants'
motions to suppress in Case No. CF-2011-347 is REVERSED and the case
REMANDED for further proceedings consistent with this Opinion. Pursuant
to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22,
Ch.18, App. (2014), the MANDATE is ORDERED issued upon the
delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF PITTSBURG COUNTY, THE
HONORABLE JOE SAM VASSAR, DISTRICT JUDGE

ATTORNEYS AT TRIAL JULIA D. ALLENSHANNON MCMURRAY2642 E. 21ST STREET STE.
190TULSA, OKLAHOMA 74014COUNSEL FOR DEFENDANT/ ANGELA MARCUM

CHARLES S. ROGERSSR. ASSISTANT ATTORNEY GENERALMEGAN B.
TILLYASSISTANT ATTORNEY GENERAL313 N.E. 21ST STREETOKLAHOMA
CITY, OK 73105COUNSEL FOR STATE

ATTORNEYS ON APPEAL

E. SCOTT PRUITTATTORNEY GENERAL OF OKLAHOMACHARLES S.
ROGERSSR. ASSISTANT ATTORNEY GENERALMEGAN B. TILLYASSISTANT
ATTORNEY GENERAL313 NE 21ST STREETOKLAHOMA CITY, OKLAHOMA
73105COUNSEL FOR APPELLANT/STATE

JULIA D. ALLEN3400 EAST 33RD
STREETTULSA, OKLAHOMA 74135COUNSEL FOR APPELLEE/ANGELA
MARCUM

OPINION BY: Smith, V.P.J.Lewis, P.J.: CONCUR IN RESULTLumpkin,
J.: SPECIALLY CONCURC. Johnson, J.: CONCURA. Johnson, J.: CONCUR
FOOTNOTES
1 All parties agree that
the seizure of text messages here, from a business provider, is governed by the
Stored Wire and Electronic Communications and Transactional Records Access Act,
and that the seizure from U.S. Cellular was proper under the provisions of that
Act. 18 U.S.C.A. §§ 2701-2712 (2002).

LUMPKIN, JUDGE: SPECIALLY CONCUR
¶1 I concur in the Court's decision and agree there is no expectation of
privacy in text messages held by a third party. I write separately to address
the issue in Proposition II, of whether Marcum had the legal capacity to claim
the protection of the Fourth Amendment. Her "expectation of privacy" is no more
than her "standing" to contest the warrant. It is not a trump over the search
warrant. As I stated in my separate writing to State v. Bass,
2013 OK CR 7, 300 P.3d 1193, while the Supreme Court in Rakas
distinguished between the traditional concept of "standing" and the
"capacity to claim the protection of the Fourth Amendment", the term "standing"
is still used by many courts. See Davis v. United States, --- U.S. ----,
131 S.Ct. 2419, 2431, 180 L.Ed.2d 285 (2011); Kentucky v. King, ---U.S.
----, 131 S.Ct. 1849, 1854 n. 1, 179 L.Ed.2d 865 (2011); Brendlin v.
California, 551 U.S. 249, 259, 127 S.Ct. 2400, 2408, 168 L.Ed.2d
132 (2007); United States v. Christian, 43 F.3d 527, 530-31 (10th Cir.
1994); United States v. Obregon, 748 F.2d 1371, 1374-75 (10th Cir. 1984); Marshall v. State, 2010 OK CR 8, ¶ 48, 232 P.3d 467, 478; State v. Howerton,
2002 OK CR 17, ¶ 19, 46 P.3d 154, 158; Anderson v. State,
1999 OK CR 44, ¶ 18, 992 P.2d 409, 417; Munson v. State,
1988 OK CR 124, ¶ 34, 758 P.2d 324, 334.
¶2 Regardless of this dichotomy of labels, the bottom line is the courts are
to determine the legal capacity of a defendant to challenge an issue based on
the analysis of an "expectation of privacy". Once a court determines the legal
capacity of a defendant to challenge the evidence at issue, the court can then
address the substantive issues relating to the objection to the evidence.
¶3 In the present case, even if Marcum had established she had a reasonable
expectation of privacy, or standing, to raise an objection to the search and
seizure of the business records, she has not shown that the execution of the
search warrant and resulting seizure of evidence was unreasonable under the
Fourth Amendment. See State v. Sittingdown, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718 ("[t]he exclusionary rule is not
applied when a law enforcement officer has conducted a search in 'objectively
reasonable reliance' upon a search warrant issued by a magistrate and has abided
by the terms of the warrant even if the warrant is subsequently determined to be
invalid" citing United States v. Leon, 468 U.S.
897,
922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677
(1984)).

Citationizer© Summary of Documents Citing This DocumentCite
Name
Level
None Found.Citationizer: Table of AuthorityCite
Name
Level
Oklahoma Court of Criminal Appeals Cases CiteNameLevel 1988 OK CR 124, 758 P.2d 324, MUNSON v. STATEDiscussed 1909 OK CR 82, 103 P. 538, 2 Okl.Cr. 519, De Graff v StateDiscussed 2002 OK CR 17, 46 P.3d 154, STATE v. HOWERTONDiscussed 2009 OK CR 9, 204 P.3d 1285, STATE v. POPEDiscussed 2010 OK CR 8, 232 P.3d 467, MARSHALL v. STATEDiscussed 2010 OK CR 22, 240 P.3d 714, STATE v. SITTINGDOWNDiscussed at Length 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATEDiscussed at Length 2013 OK CR 7, 300 P.3d 1193, STATE v. BASSDiscussed at Length 1999 OK CR 44, 992 P.2d 409, Anderson v. StateDiscussed 1975 OK CR 148, 538 P.2d 1080, STATE v. THOMASONDiscussed 1984 OK CR 54, 678 P.2d 1192, CHAMPEAU v. STATEDiscussed 1985 OK CR 119, 706 P.2d 915, LONG v. STATEDiscussedTitle 13. Common Carriers CiteNameLevel 13 O.S. 176.4, Acts Not ProhibitedCitedTitle 21. Crimes and Punishments CiteNameLevel 21 O.S. 424, Punishment for Conspiracy Against StateCited 21 O.S. 491, Perjury Defined - DefenseCitedTitle 22. Criminal Procedure CiteNameLevel 22 O.S. 1053, State or Municipality May Appeal in What CasesDiscussed at Length